**In the Matter of John Michael McKINNEY & Diane Balkcom McKinney, Debtors.**

**GEORGIA BANK AND TRUST COMPANY, Plaintiff,**

v.

**John Michael McKINNEY & Diane Balkcom McKinney, Defendants.**

Bankruptcy No. 81–50568.
Adv. No. 81–5130.

United States Bankruptcy Court,
M. D. Georgia,
Macon Division.

March 24, 1982.

Emmett L. Goodman, Jr., Macon, Ga., for plaintiff.

A. Dale Albritton, Macon, Ga., for defendants.

## MEMORANDUM DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

John Michael McKinney and Diane Balkcom McKinney (hereinafter Defendants) filed their joint petition under Chapter 7 of the Bankruptcy Code in this Court on May 27, 1981. Within the time set by the Court, the Georgia Bank and Trust Company (hereinafter Plaintiff) filed its complaint objecting to the Defendants' discharge and also seeking a determination that a certain debt owed to it was nondischargeable.

This matter came on for pre-trial conference on September 4, 1981, and at that conference, the Plaintiff abandoned its objection to the Defendants' discharge. Thus, this adversary proceeding deals with whether a certain debt owed to the Plaintiff by the Defendants is dischargeable under the provisions of 11 U.S.C.A. § 523(a)(2)(A) (West 1979).

The hearing on this matter was held on October 8, 1981, and after consideration of the evidence and the arguments of counsel, the Court has this day entered an order determining the debt owed by the Defendants to the Plaintiff to be dischargeable in bankruptcy. In support of its order, the Court attaches the following findings of fact and conclusions of law.

### FINDINGS OF FACT

On September 14, 1980, the Defendants applied for a charge account with the Plaintiff. At the time of the application, Mr. McKinney was employed at Williams, Faircloth & Associates as a commission life insurance agent, and he was traveling extensively. The charge account with the Plaintiff was a credit card account on Rogers Oil Company (Diamond service stations), and it was to be used by Mr. McKinney to purchase gasoline. It was also to serve as an expense record for Mr. McKinney's tax records. The application was approved by the Plaintiff, and the Defendants were given a $200.00 line of credit on the account.

The first purchase made by the Defendants with their credit cards was made on October 2, 1980, and the first statement on their account was sent to the Defendants sometime in late October of 1980. This statement shows a closing date of October 15, 1980 and an account balance of $37.00. The statement shows that the Defendants made no payments on the account (none having been due before the date of this statement) and that the minimum payment due was $10.00.

The next statement to the Defendants shows a closing date of November 14, 1980

and an account balance of $192.12. This statement shows that the Defendants made no payments on the account and that the minimum payment due was $20.00.

The next statement to the Defendants is the first to show that the Defendants exceeded their credit limit. The statement has a closing date of December 15, 1980 and shows an account balance of $280.31. The statement shows that the Defendants made a payment of $37.00 on their account and that a minimum payment of $14.00 was due.[1] The statement contains no request for the Defendants to bring their account within the $200.00 credit limit. The Plaintiff's normal procedure is to write its customers when they exceed their credit limit by $50.00 or more and request that the account be reduced sufficiently to bring it within the credit limit. This procedure was not followed by the Plaintiff on the Defendant's account.

The next statement to the Defendants has a closing date of January 16, 1981 and shows an account balance of $363.27. The statement shows that the Defendants made a $50.00 payment on their account and that a minimum payment of $18.00 was due. Again, no request was made for the Defendants to bring their account within its credit limit.

The next statement to the Defendants has a closing date of February 13, 1981 and has an account balance of $471.44. The statement shows that the Defendants made a $50.00 payment on their account and that a minimum payment of $23.00 was due.

The next statement to the Defendants has a closing date of March 17, 1981 and shows a balance on the account of $568.05. The statement shows that the Defendants made no payments on their account and that a minimum payment of $51.00 was due.

The next statement has a closing date of April 16, 1981 and shows a balance of $604.36. The statement shows that the Defendants made a $51.00 payment on their

account and that a minimum payment of $30.00 was due. This statement reveal_ that the Defendants last used their credit cards on March 25, 1981.

The final statement to the Defendants has a closing date of May 15, 1981 and shows a balance on the account of $613.26. The statement shows that the Defendants made no payment on their account and that a minimum payment of $60.00 was due. The only charge on this statement is $8.90 for a finance charge.

On March 31, 1981, the Plaintiff sent the Defendants a letter stating that their charge account was closed and that any further use of their credit cards could be considered fraudulent. The Defendants' last charge with their credit cards was made prior to the Plaintiff's March 31, 1981 letter. Prior to this letter, the Defendants were never requested by the Plaintiff to bring the account within its credit limit.

During the period of time in which the Defendants were using their credit cards, the Defendants were employed. Mrs. McKinney was netting approximately $289.00 biweekly. Mr. McKinney was being paid strictly on a commission basis. In October 1980, he made approximately $1,800.00. This decreased to $1,000.00 in November and December of 1980 and to somewhere between $400.00 and $600.00 per month during January, February, and March of 1981.

It should be noted here that the Defendants' use of their charge cards declined after February 13, 1981. The statement with closing date of February 13, 1981 shows ten charges. The next statement shows five charges, and the last statement revealing charges, shows four charges.

On May 22, 1981, the Defendants contacted their attorney concerning their financial problems, and on May 27, 1981, their bankruptcy petition was filed in this Court.

The Defendants both testified that when they used their charge cards, they intended to pay for the items charged.

---

1. Even if the Defendants had made the $14.00 minimum payment as requested by the state-

ment, the account still would have exceeded the credit limit.

## CONCLUSIONS OF LAW AND DISCUSSION

This Court has jurisdiction over the parties and the subject matter herein.

■ The Plaintiff has the burden of showing that its debt falls within the statutory exceptions to discharge. *Love v. Tower Loan (In re Love)*, 577 F.2d 344 (5th Cir.), reh. denied, 582 F.2d 41 (5th Cir. 1978).

In this case, the Plaintiff seeks to have its debt determined to be nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code, which states as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance [sic] of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

11 U.S.C.A. § 523(a)(2)(A) (West 1979) (footnote omitted).

■ In order for the Plaintiff's debt to come within this section, the Plaintiff must show that its debt resulted from false pretenses or false representations which were knowingly and fraudulently made by the Defendants. The Plaintiff must also show that it relied upon these false pretenses or false representations. 3 Collier on Bankruptcy ¶ 523.08[4] (15th ed. 1981). The debt is also nondischargeable if it resulted from actual fraud perpetrated by the Defendants upon the Plaintiff.

■ The fraud required by this statute must be actual or overt fraud, not fraud implied by law. Fraud, "by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 3 Collier on

Bankruptcy ¶ 523.08[5], 523–47 (15th ed. 1981). A showing of an intent to deceive is necessary when the question of dischargeability is based upon false pretenses or false representations. *Id.; cf. Public Finance Corp. v. Taylor (In re Taylor)*, 514 F.2d 1370, 1373 (9th Cir. 1975) (requiring intent to deceive in an action questioning the dischargeability of a debt based upon false pretenses or false representations).

■ In this adversary proceeding, the Plaintiff has not shown any overt misrepresentation or the required intent to deceive on the part of the Defendants.

The Plaintiff rests its case on evidence that the Defendants made purchases on their credit cards at a time when they were insolvent, and that these purchases caused the account to go over its credit limit. Upon similar facts, courts in other jurisdictions have found credit card debts to be nondischargeable. One such case, *Creditors Protective Association, Inc. v. McKinzie* (In re McKinzie), 3 B.C.D. 1092 (Bkrtcy.D.Ore. 1977),[2] analyzed the problem of credit card transactions as follows:

It is commonly stated in credit card cases that the representation made is twofold:

(1) that the cardholder can repay, and

(2) that the cardholder intends to repay.

*In re Perticaro, supra; In re Gibson*, 1 Bankr.Ct.Dec. 449 (SD Ohio 1974); *In re Black, supra*. Thus if, when the representation is made, the cardholder is insolvent or does not intend to repay, the representation will be false for purposes of § 17a(2). Facts which will justify an inference that the representation was false will often support inferences that the cardholder knew it to be false or recklessly disregarded its veracity and that the cardholder intended to deceive the creditor. Some common fact patterns are that the cardholder was having difficulty repaying pre-existing debt, *In re*

**2.** *McKinzie* is a case under the former Bankruptcy Act, but except for the addition of actual fraud as a basis for relief under the Bank-

ruptcy Code, the law is the same, and thus cases under the Act are persuasive on the issue before this Court.

Black, supra, In re Schneider, supra, In re Alspaugh, 4 Collier Bankr.Cases 648 (MDNC 1975), that the cardholder contemplated filing bankruptcy prior to incurring the charges, In re Black, supra, In re Schneider, supra, that all or most of the charges were under $50.00 (customarily merchants call the credit card company to check the status of an account where a Master Charge or BankAmericard purchase exceeds $50.00, In re Perticaro, supra, In re Gibson, supra, In re Reinhart, 1 Bankr.Ct.Dec. 666 (ED Va 1975), In re Whitehead, 2 Bankr.Ct.Dec. 1647 (D Utah 1976), In re Reecer, 2 Collier Bankr.Cases 398 (SD Ind 1974), In re Blaylock, 5 Collier Bankr.Cases 250 (WD [sic] Ga 1975), that the cardholder had exceeded the credit limit on his account In re Newberry, 1 Bankr.Ct.Dec. 419 (SD Ala 1974), [5], In re Portz, 1 Bankr.Ct. Dec. 51, 2 Collier Bankr.Cases 380 (MD Ga 1974), In re Cameron, 1 Bankr.Ct.Dec. 53, 2 Collier Bankr.Cases 379 (MD Ga 1974), In re Perticaro supra, In re Gibson, supra, In re Williamson, 1 Bankr.Ct.Dec. 15, 2 Collier Bankr.Cases 239 (ED Tenn 1974), In re Reinhart, supra, In re Bowman, 1 Bankr.Ct.Dec. 327 (SD Ga 1974), In re Whitehead, supra, In re Reecer, supra [sic], In re Zolovchik, 3 Collier Bankr.Cases 402 (MD Fla 1974), In re Alspaugh, supra, In re Blaylock, supra, and that the credit card was used after issuer demanded its return, In re Newberry, supra, In re Cameron, supra, In re Bowman, supra, In re Reecer, supra.

Reliance commonly seems to be presumed from the presence of the other elements of fraud.

The defendant in this case continued to use the card after being requested not to do so by the plaintiff. The defendant additionally, after falsely informing the plaintiff on one occasion that the card had been lost, on another that the card would be returned, and on another that she had destroyed the card, continued to make additional purchases with the card. This conduct was fraudulent and demonstrates the defendant's intention to deceive the plaintiff.

Id. at 1093.

The McKinzie decision contains an excellent discussion of credit card use and how this use should be viewed by bankruptcy courts in addressing the dischargeability of debt. The decision also notes that in the Fifth Circuit (and now in the Eleventh Circuit),[3] more than a mere showing that credit was obtained while the debtor was insolvent is required for a court to find that a debt was created by false pretenses or false representations. An overt misrepresentation is necessary, Davison-Paxon Co. v. Caldwell, 115 F.2d 189 (5th Cir. 1940), cert. denied, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941). While Davison-Paxon has been "criticized severely . . . [it] is still the law of the Fifth Circuit . . . [and it is not appropriate for a trial-court to overrule it]." Bank of Mississippi v. Pritchard (In re Pritchard), 11 B.R. 614, 620 (Bkrtcy.N.D. Miss.1981). In this adversary proceeding, no false pretenses or false representations as required by Davison-Paxon have been shown, and as the Court in Pritchard noted, it is not the function of this Court to effectively overrule the United States Court of Appeals for the Fifth Circuit by ignoring the requirements of its opinions.

Upon analysis of the facts in this adversary proceeding, the Court is unable to find that the Plaintiff has shown anything other than that the Defendants were having financial problems during the time the Defendants were using the Plaintiff's credit cards. A showing of mere insolvency is not sufficient for this Court to infer an intent to deceive. If insolvency is to be used to draw such an inference, it must be hopeless insolvency sufficient to rebut any possibility of good faith. Cf. Sears, Roebuck & Co. v. Boydston (In re Boydston), 520 F.2d 1098, 1101 (5th Cir. 1975); In re

---

**3.** Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down by the former Fifth Circuit prior to the close of its business on September 30, 1981. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir. 1981).

*Black*, 373 F.Supp. 105 (Bkrtcy.E.D.Wis. 1974).

In this adversary proceeding, the Defendants did not go on a shopping spree just prior to, and in anticipation of, filing bankruptcy. In fact, they had stopped making purchases on their account prior to receiving the Plaintiff's letter informing them that further use of their cards could be considered fraudulent. Neither was it shown that the Defendants contemplated bankruptcy prior to making any of the charges with their credit cards. In fact, they first contacted an attorney concerning their financial condition approximately two months after their last purchase.

The Defendants insist that they intended at all times to repay the Plaintiff for their purchases, and their actions support this contention. They made payments on the account as they could, and in some instances, their payments exceeded the minimum payment due. The Defendants also voluntarily curtailed purchases on their account when they realized that they were having financial difficulties and yet continued to make payments as they could.

The Defendants did exceed their established credit limit, but the Plaintiff made no demand upon them to bring their account within its credit limit. Basically, the Plaintiff's statements to the Defendants merely stated the account balance, the credit limit, and a minimum payment due. The Defendants honestly tried to make their minimum monthly payments and believed that this was all that was expected of them. Their failure to make their payments and their bankruptcy appear to be due to an unexpected slump in Mr. McKinney's insurance business rather than some scheme to defraud the Plaintiff.

The record reveals two unfortunate debtors who overextended their credit at a time when both were employed and who simply could not meet their obligations when one of their jobs was, in effect, lost. *Cf. Sears, Roebuck & Co. v. Wood* (In re Wood), 571 F.2d 284 (5th Cir. 1978). This Court cannot find from the record that the Defendants have acted in such a manner as to make their debt to the Plaintiff nondischargeable in bankruptcy. Accordingly, the Court must determine that the debt the Defendants owe to the Plaintiff is dischargeable in bankruptcy.

The Plaintiff herein has requested an award of costs against the Defendants. This request is denied.

The Defendants have not requested an award of costs or attorney's fees in this proceeding. Section 523(d) of the Bankruptcy Code, 11 U.S.C.A. § 523(d) (West 1979), requires this Court to make an award of attorney's fees and costs in favor of a debtor if a creditor has requested a determination of the dischargeability of a consumer debt under Section 523(a)(2) and such debt is found dischargeable. The record is not clear as to whether the debt involved in this decision is consumer or commercial, but since the Defendants have made no demand for an award of attorney's fees, the Court must assume that it was considered by them to be commercial in nature. The Court will therefore not assess attorney's fees against the Plaintiff under Section 523(d).