In re Jay Boyd CARLEY and Peggy D. Carley, Debtors.

**ALBUQUERQUE NATIONAL BANK, a national banking association, Plaintiff,**

v.

**Jay B. CARLEY, Defendant.**

**Bankruptcy No. 81–01308 M L.**
**Adv. No. 82–0114.**

United States Bankruptcy Court, D. New Mexico.

Sept. 22, 1982.

Stephen T. Auburn, Albuquerque, N.M., for plaintiff.

David I. Rupp, Alamogordo, N.M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the complaint of Albuquerque National Bank (ANB) to determine dischargeability of a debt owed by the debtor, Jay B. Carley. ANB alleges that the use of a Mastercard charge card by the debtor when the debtor's finances were in uncertain condition amounted to fraud and that the balance due on the Mastercard account is, therefore, nondischargeable.

The evidence presented during the trial of this matter indicated that the debtor first became aware of the need for action to improve his financial affairs in September of 1981. At that time he consulted an attorney who recommended bankruptcy as a last resort and suggested various other measures, including returning all of his credit cards to the issuing companies. The debtor testified that he returned all except his Mastercard because that was the account he wished to keep; he had used it for some ten years, and he expected his financial situation to improve. The debtor expected his bow and pack store to gain business as the fall hunting season approached, and had a belief (which was not shown to be unreasonable) that his photography studio would get a contract for school pictures which would result in substantial profit. As events actually happened, the debtor's ability to run the bow and pack store was severely limited by his wife's being hospitalized for appendicitis and, shortly thereafter, for injuries from a dog attack, and by his son's being injured in a dog attack. The contract for the school pictures fell through, and the debtor found his prospects diminishing. The debtor filed bankruptcy on December 14, 1981.

The evidence also showed that the debtor used his Mastercard for purchases totalling $342.67 in the billing period ending September 10, 1981, $538.38 in the billing period ending October 9, 1981, $1,402.12 for the billing period ending November 10, 1981, and $144.72 for the billing period ending December 9, 1981; the debtor's Mastercard was confiscated by a merchant on November 11, 1981; and the evidence shows that all purchases appearing on the December 9, 1981, statement were made between November 2, 1981, and November 9, 1981. During the billing periods listed above, the statements sent to the debtor by ANB showed the debtor's credit limit, but when the balance was over that, simply showed the amount available at billing as $0. Never, when the balance exceeded the credit limit, did the minimum payment due equal the amount by which the balance exceeded the credit limit, and while the statements did reflect when a payment was past due, there were no notations on these bills which reflected that ANB objected to the balance exceeding the credit limit or that ANB expected payment in the full amount by which the balance exceeded the credit limit. The only evidence that the debtor actually knew of the status of his Mastercard account is testimony of an adjuster for Mesa Grande Bank Cards, the entity which handles the Mastercard accounts for ANB, that on October 9, 1981, a letter was sent to the debtor advising him to stop use of his Mastercard. The adjuster's testimony is that the letter would have been mailed on the next business day after October 9, 1981.

In order to find the debtor's debt to ANB nondischargeable, we would have to find that (1) the debtor knowingly made a false representation; (2) that it was made with an intent to defraud; (3) that ANB relied on the false information. *First Nat'l Bank of Chicago v. Banasiak (In re Banasiak),* 8 B.R. 171 (Bkrtcy.M.D.Fla.1981). The purchase of goods with the card is an implied representation that the buyer has the means and the intention to pay for his purchases. However, we agree with the court in *Georgia Bank & Trust Co. v. McKinney (In re McKinney),* 8 B.C.D. 1080, 18 B.R. 607 (Bkrtcy.M.D.Ga.1982) that an

intent to deceive must be shown. A showing of insolvency will not infer that intent, particularly in the present case where the debtor offered undisputed evidence that he believed his prospects were going to improve and that unforeseeable mishaps ruined his prospects. The instant case is also similar to that presented in *Georgia Bank & Trust* in that the statement sent to the debtor never indicated that the account balance was over the credit limit nor did the statement include a request that payment be made to bring the balance within that limit. There is no evidence that the debtor was so advised until sometime after October 9, 1981, when the bank adjuster stated he had personal knowledge of a letter being sent to the debtor telling him of the account's being over its limit and telling the debtor to cease use of his Mastercard. In order to allow for the business channels and the mails, we hereby find that such notice was effective as to the debtor on October 20, 1981, and that, having been told not to use his card, his continued use of it after that date was fraudulent. The debtor's charges after that date amount to $1,154.44, and we find that amount of ANB's claim against the debtor nondischargeable. The balance of ANB's claim is dischargeable.

An appropriate order shall enter.