In re Michael SIDORE, Debtor.

The COMMERCIAL UNION INSURANCE COMPANY, Plaintiff

v.

Michael SIDORE, Defendant.

Bankruptcy Nos. 83–20166x, 83–2114A.

United States Bankruptcy Court, W.D. New York.

June 18, 1984.

Daniel H. Overbeck, Rochester, N.Y., for debtor-defendant.

Joseph B. Schauseil, Rochester, N.Y., for plaintiff.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This motion was brought by Michael Sidore, Chapter 7 debtor, to secure costs and reasonable attorney's fees for his defense of an action brought by a creditor, The Commercial Union Insurance Company, to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2).

Following trial, this Court determined by order and judgment dated October 24, 1983 that the debt in issue was discharged, the complaint dismissed on the merits and that the debtor may file an application for an award of attorney's fees and costs pursuant to 11 U.S.C. § 523(d). Commercial Union alleged that it had overpaid Sidore $13,-960.40 in worker's compensation which the debtor received while allegedly working at P & M Motors in which he was a partner with his brother. These payments were received between July 1, 1976 and April 6, 1981. The petition was filed February 24, 1983. The Worker's Compensation Board, after hearing held June 9, 1981, decided that compensation should have been terminated on July 1, 1976. This was affirmed on appeal. Excess payments made thereafter were found to amount to $13,960.40. The determination was based on a finding that the defendant had post-accident earning in excess of his pre-accident average weekly wage.

The complaint alleges that the debtor obtained this money from Commercial by false pretenses, false representations, and fraudulent acts with intent to deceive Commercial and that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2), (4), (6) and § 523(c).

Defendant-debtor contended in a pretrial memorandum that the creditor could not except the debt from discharge under 11 U.S.C. § 523(a)(2)(A) because he had not shown that the debtor made a false misrepresentation, which he knew to be false, with intent to deceive, and on which the creditor relied, suffering a loss. The debtor claimed that exception to discharge for a false representation or actual fraud did not include implied fraud. He claimed that under the Worker's Compensation law the Board had an affirmative duty to make inquiry and change the award. He claimed that the debtor with his level of education and lack of assistance of counsel had not intended to deceive the Board by accepting payments.

After hearing plaintiff's proof and prior to the defense, this Court granted defendant's motion to dismiss. The Court found that plaintiff had failed to establish fraud or to establish an intent to deceive by his failure to report earnings from his partnership.

The defendant seeks legal fees for 41½ hours of service at $100 per hour and $15 in disbursements. Defendant's own affidavit, however, states that his retainer agreement for fees was at the rate of $60 per hour. Commercial Union contends that the debt is not a consumer debt which would give rise to the award of attorney's fees under § 523(d). It also contends that any intention to seek a fees award by the debt-

or should be pleaded in the answer so that the creditor may contest the issue on the consumer debt.

An action may be brought to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2) which excepts debts from discharge for obtaining money (A) by false pretenses, representations or actual fraud and (B) for debts incurred by written statements concerning the debtor's financial condition. If a creditor requests a determination of dischargeability of a consumer debt under § 523(a)(2) and such debt is discharged, the Bankruptcy Code provides for costs and attorney's fees to the debtor. Section 523(d) provides that under the above conditions:

"... The court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a resonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable."

The legislative history to this section states that it is a compromise by the House and Senate which attempts to balance the scales more fairly in the area of the dischargeability of consumer debts based on false statements which are contested by creditors whose leverage over debtors comes with the threat of costly litigation. H.R. 95–595, 95th Cong., 1st Sess. 131–32 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The legislative history indicates that debtors may be forced to settle litigation by creditors claiming false financial statements or fraud that they ordinarily would win because of inability to finance its costs. By awarding attorney's fees, "The present pressure on the honest debtor to settle in order to avoid attorney's fees in litigation over a creditor—induced false statement is eliminated. The creditor is protected from dishonest debtors by the continuance of the exception to discharge which must be initiated by the creditor." Id. 131, U.S.Code Cong. & Admin.News 1978, p. 6092. The legislative history also states that the section does not award the creditor attorney's fees if he prevails. The

Congress stated that "such a provision would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases." Id. 131, U.S.Code Cong. & Admin.News 1978, p. 6092.

Finally, the history states that there is firm policy behind making the cost-fee provision mandatory under § 523(d). If the provision were made permissive with discretion in the Court to award such amounts as were proper in each particular case, the debtor would be once again subject to the risk of paying attorney's fees. "The balance would again shift back toward the creditor, and would put pressure on the debtor to settle. Making the provision discretionary would seriously weaken the protection it provides." Id. 131–32, U.S.Code Cong. & Admin.News 1978, p. 6093.

Section 523(d) was interpreted in *In re Folster*, 17 B.R. 171 (Bkrtcy.D.Hawaii 1982). There the court noted that the original House version provided that the unsuccessful creditor pay to the debtor damages resulting from the action. The Senate version required attorney's fees only if the complaint was frivolous or not brought by the creditor in good faith. Congress enacted the mandatory word "shall" in awarding attorney's fees but tempered it with the phrase "unless such granting of judgment would be clearly inequitable". In *Folster*, the debtor had submitted a false statement. The court found that the creditor had neither shown reliance nor intent to deceive and that, therefore, the awarding of fees was not inequitable.

■ It would seem that Congress's chief purpose in making the award of fees mandatory with an equitable limitation was pure economics and not based on the merits of an individual case. The debtor's uncertainty about the merits of the case would have a chilling effect on his willingness to finance an effective, yet costly defense. The equity is the relative ability of the parties to sustain the cost. Therefore, when an effective defense is established, fees are mandatory unless the creditor is far less able to pay the fees than a debtor,

for example, when a small creditor would risk more than the actual debt in litigation to prove fraud.

In the United States, attorney's fees are generally not awarded as taxable costs to the successful party. The philosophy behind this is that each side assumes the risks and benefits of litigation, and may be deterred from bringing an uneconomical or meritless suit. This rule has been altered by statutory provisions in cases where one side can assume these risks but an imbalance exists because the other side cannot assume these risks. Injustice, therefore, results. 11 U.S.C. § 523(d) is an example of such a statute in which the debtor cannot afford an effective defense and may be forced to settle a meritorious case because of the risk of expensive litigation. There are similar policies in consumer fraud and civil right cases.

In *Associates Financial Services Co. of Ohio Inc. v. Lane*, 12 B.R. 455 (Bkrtcy.N. D.Ohio 1981), the court stated that the words mandating fees, "shall grant", requires a judgment against a creditor unless it would be clearly inequitable. The creditor had proved a false statement but had failed to prove reliance. The merits of the case did not effect the equities. The court found that it is the unsuccessful creditor's burden to prove that the imposition of attorney's fees is clearly inequitable and awarded the fees (p. 457). See also *In re Majewski*, 7 B.R. 904 (Bkrtcy.D.Conn.1981); *In re Schlickmann*, 7 B.R. 139 (Bkrtcy.D. Mass.1980).

■ Commercial Union cites in its brief a number of cases which have held that if the creditor establishes a prima facie case or brings an action in good faith, which is not frivolous, the award of attorney's fees would be inequitable. *In re Quarterman*, 22 B.R. 267 (Bkrtcy.N.D.Ga.1982); *In re Rauch*, 18 B.R. 99 (Bkrtcy.W.D.Mo.1982). These cases are incorrect. The Senate's version of the bill included a provision that attorney's fees are awarded only if the case is frivolous. This was deleted in the compromise for the reasons set forth above. In addition, good faith is not enough to make the award of fees inequitable. As stated in *Schlickmann*, supra, Congress in § 523(d) has given creditors who had nothing to lose a reason for second thought before filing actions under § 523(a)(2), by imposing costs and fees should they fail (p. 140 *Schlickmann*). Therefore, good faith on the merits will not bar the awarding of fees.

■ Another defense raised by Commercial Union is that the application for fees in a consumer debt case involves questions of fact which must be affirmatively pled or they are waived. *West Springfield M.E. Credit Union v. Finnie*, 21 B.R. 368, 6 C.B.C.2d 1036 (Bkrtcy.D.Mass.1982). Since § 523(d) clearly states that the debtor is entitled to costs and reasonable attorney's fees, the creditor is on notice that loss of his claim could result in his being assessed those fees and costs. At the time the answer is filed, the debtor may have little knowledge as to what fees and costs the case will engender. Fees can be determined at a hearing after determination of the main suit. Such a hearing can establish any factual dispute such as whether a debt is a consumer debt or whether the award is inequitable. Therefore, to raise it earlier is to confuse the issue at the dischargeability trial and defeat the deterrent effect that this provision has on creditors litigating under § 523(a)(2). *Associate Financed v. Lane*, supra, has held that the unsuccessful creditor has the burden of proving that attorney's fees would be clearly inequitable (p. 457). It is unusual to make the debtor plead what the creditor, if unsuccessful, must prove. Also, the fact of success is not known until the outcome of the hearing and any proof before hand would be premature and wasteful. In *Louisiana National Bank of Baton Rouge v. Talbot*, 16 B.R. 50, 55 (Bkrtcy.M.D.La. 1981), the debtor did not demand costs and attorney's fees in the answer, but did do so in his post-trial memorandum. The court deemed this sufficient and awarded fees. Here such a demand was made in the debtor's post-trial memorandum and application for fees. This procedural question has al-

ready been decided in the judgment in this case where this court granted leave to the attorneys for the defendants to apply for these fees. This judgment was not appealed from and the creditor cannot now object to the absence of a demand for fees in the answer.

■ Commercial Union raises another defense that § 523(a)(2) does not apply since this overpayment is not a consumer debt. It challenges the fact that the overpayment is a debt since Mr. Sidore never incurred it. A debt under the Bankruptcy Code, § 101(11), is defined as a liability on a claim. A liability need not be created by a promise or action of the debtor. It may arise by operation of law. In the instant case, when Sidore received compensation payment to which it was determined by the Board he was not entitled, he became liable for their repayment. On March 30, 1983, Commercial filed a proof of claim for "wrongfully obtained worker's compensation benefits", in the sum of $14,000. Thus, it is clear that there is a debt involved.

The question now becomes whether this is a consumer debt. Under the Bankruptcy Code, § 101(7), a consumer debt means a debt incurred by an individual for a personal, family, or household purpose. The legislative history to this section states that the definition is adapted from consumer protection laws. H.R. 95–595 (95th Congr) p. 309 (1977). In the Consumer Credit Protection Act, 15 U.S.C. § 1602, the adjective consumer used with reference to a credit transaction characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person and the money, property or services which are the subject of the transaction are primarily for personal, family or household purposes. Under the Consumer Credit Protection Act, 15 U.S.C. § 1603, credit transactions involving extensions of credit for business or commercial purposes or to government agencies or organizations are exempt transactions. In the instant case, we are dealing with a consumer debt not a consumer loan. However, the adjective consumer is the

same. To be consistent, the consumer must be a natural person and the money or property involved used primarily for personal or household use. Personal use is contrasted with business use. In the instant case, the debt was created by $56 per week payments to a person, Michael Sidore, paid under the Worker's Compensation law to replace salaries lost because of an injury. These payments were obviously for personal, family, and household purposes. They are substitutes for lost wages upon which the debtor could live. There can be no doubt that they are personal consumer rather than business debts. It is the very purpose of the Worker's Compensation law that payments be made to an individual so that he may support himself despite his injury. It follows, therefore, that the money owed Commercial was a consumer debt within the provisions of § 523(d).

The Court in this case may set reasonable attorney's fees rather than those which have been requested. Commercial Union states that 41½ hours is excessive. Debtor's attorney has catalogued the hours which he spent on this case. They do not appear to be unreasonable. Although, Commercial's attorney claims they are excessive, he does not show why. Although the debtor's attorney requests $100 per hour, his client states that the attorney was retained for $60 an hour. The amount the debtor is entitled to for fees is the amount that he is required to pay. He has paid his attorney $400 of a request $500 down payment. The fee awarded is the reasonable fee in this area for preparing and defending a comparable case in the amount of $2,500, plus $15 in costs.

In summary, the overpayment of Worker's Compensation benefits is a consumer debt. Since the debtor was the prevailing party in the § 523(a)(2) litigation brought by the creditor, he is entitled to attorney's fees under § 523(d). The creditor has not shown an inability to pay these fees. The case was dismissed on the merits for failure of proof of the necessary elements of their claim. It was not shown that the

award of fees in this case is inequitable and it is so ordered.