In re Virginia Ann **FURIMSKY**, Debtor.

**W.A.F.B. FEDERAL CREDIT UNION, Plaintiff,**

v.

**Virginia Ann FURIMSKY, a single person, Defendant.**

**Bankruptcy No. B–81–3025–PHX–GBN. Adv. No. 82–584–GBN.**

United States Bankruptcy Court. D. Arizona.

Aug. 9, 1984.

Conway T. Ryan, Law Offices of Conway T. Ryan, P.C., Chandler, Ariz., for debtor/defendant.

Howard M. Snyder, Snyder & Robens, Phoenix, Ariz., for plaintiff.

### ORDER

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

Debtor Furimsky successfully defended an action brought by one of her creditors to determine dischargeability of a claim created through use of a materially false financial statement. 11 U.S.C. § 523(a)(2)(B). 40 B.R. 350.

She now seeks award of an attorney's fee against plaintiff premised on § 523(d) of the Code:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section,

and such debt is discharged, the court *shall* grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, *unless such granting of judgment would be clearly inequitable.* (Emphasis added).

■ The first issue, unaddressed by the parties, concerns my jurisdiction to entertain defendant's request when plaintiff has appealed the decision dismissing its § 523(a)(2) complaint. The Ninth Circuit allows such jurisdiction in a nonbankruptcy context; I can see no reason why the Code would require a contrary result. *Masalosalo by Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 956–57 (9th Cir.1983) (District diversity suit). Accordingly, I will act on defendant's motion.

The parties dispute whether my memorandum decision concluded Ms. Furimsky intended to deceive the institution when she submitted her materially false financial statement on June 17, 1981. Assuming such a finding, the creditor cites *In re Granovetter,* 29 B.R. 631 (Bankr.E.D.N.Y. 1983) and *In re Archangeli,* 6 B.R. 50 (Bankr.D.Maine 1980) for the proposition such intent makes a fee award inequitable. *Granovetter's* holding may be dicta. 29 B.R. 641–42 (underlying debt not a "consumer debt"). Without discussion of the legislative history, *Archangeli* held the creditor's demonstration debtor had an actual intent to deceive established that suit was brought in good faith. Accordingly, neither costs nor attorney's fees was awarded. 6 B.R., at 53.

■ Both *Archangeli* and plaintiff's cited case of *In re Quarterman,* 22 B.R. 267, 268 (Bankr.N.D.Ga.1982) hold an abuse of process or lack of good faith by creditor

are required for imposition of fees. I respectfully disagree.

First, the "good faith" standard of creditor conduct, originally included in the Senate version of § 523(d), was specifically omitted from the final statute.[1] *In re Carmen,* 723 F.2d 16, 18 (6th Cir.1983). The new statute effected a policy shift in favor of awarding fees to prevailing debtors in dischargeability proceedings. *In re Fulwiler,* 624 F.2d 908, n.2 (9th Cir.1980) (*dicta*). The issue whether to award attorney's fees under § 523(d) is not dependent upon a finding of bad faith or frivolity on the creditor's part. *In re Carmen, supra,* 723 F.2d, at 18, citing *Matter of Majewski,* 7 B.R. 904, 905 (Bankr.D.Conn.1981).

■ Second, no discretion to award the fee is permitted absent plaintiff's establishment of clear inequity; the statute's language is mandatory. *In re Carmen, supra,* at 18; *In re Folster,* 17 B.R. 171, 172 (Bankr.D.Hawaii 1982); *In re Schlickmann,* 7 B.R. 139, 141 (Bankr.D.Mass. 1980).

The creditor and its cited cases seize upon certain language in the legislative history to argue the debtor's intent is a primary factor in determining whether an award would be clearly inequitable:

> The purpose of the provision is to discourage creditors from initiating proceedings to obtaining a false financial statement exception to discharge in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair the debtor's fresh start and are contrary to the spirit of the bankruptcy laws.

Senate Rep. No. 95–989 (July 14, 1978), 95th Cong., 2d Sess., at 80, reprinted in 1978 U.S.Code, Cong. & Admin.News 5787, at 5866.

---

1. Under § 17(a)(2) of the prior Act, the Ninth Circuit held an unsuccessful plaintiff could not have attorney's fees awarded against him in the absence of bad faith or vexatious conduct. *In re Fulwiler,* 624 F.2d 908, 910 (1980). The Senate provision continued this prior rule and allowed a fee award only if the complaint was frivolous or not brought in good faith. S. 2266, 95th Cong., 2d Sess. (1977). The House version

would have granted pecuniary damages to the prevailing debtor. H.R. 8200, 95th Cong., 1st Sess. (1977). The final compromise requires granting of attorney's fees unless clearly inequitable. 124 Cong. Rep. H 11096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 124 Cong. Rep. S. 17412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). *See, In re Folster,* 17 B.R. 171 (Bankr.D.Hawaii 1982).

The argument is that a debtor who intended to defraud a creditor cannot come within § 523(d) because he is not an honest debtor.

This is not the whole story. Legislative history also reveals Congress was equally concerned with creditor abuses:

> The premise of the exception to discharge is that a creditor that extended credit based on misinformation or fraudulent information transmitted by the debtor should be protected. The provision, however, has led to abuse in consumer cases, and has frustrated the fresh start goal of the bankruptcy discharge.

> It is a frequent practice for consumer finance companies to take a list from each loan applicant of other loans or debts that the applicant has outstanding. While the consumer finance companies use these statements in evaluating the credit risk, very often the statements are used as a basis for a false financial statement exception to discharge. The forms that the applicant fills out often have too little space for a complete list of debts. Frequently, a loan applicant is instructed by a loan officer to list only a few or only the most important of his debts. Then, at the bottom of the form, the phrase "I have no other debts" is either printed on the form, or the applicant is instructed to write the phrase in his own handwriting. In addition, the form states that the creditor has relied on the statement in granting the loan.

> However, the creditor often has other sources of information, such as credit bureau reports, to verify the accuracy of the list of debts. Nevertheless, if the debtor files bankruptcy, creditors with these financial statements are in a position to threaten the debtor with litigation to determine the dischargeability of the debt, based on the false financial statement exception to discharge. Most often, there has been no intent to deceive on the part of the debtor, and, as in so many aspects of the creditor-debtor relationship, the debtor has simply followed the creditor's instructions with little understanding of the consequences of his action.

> Creditor practices in this area have been so strong that the Bankruptcy Commission recommended that the false financial statement exception to discharge be eliminated for consumer debts. This bill recognizes, however, that there are actual instances of consumer fraud, and that creditors should be protected from fraudulent debtors. It retains the exception, with small modifications. But it also recognizes that the leverage creditors have over their debtors comes not so much at the stage when the loan application is made, but rather when bankruptcy ensues.

> The threat of litigation over this exception to discharge and its attendant costs are often enough to induce the debtor to settle for a reduced sum, in order to avoid the costs of litigation. Thus, creditors with marginal cases are usually able to have at least part of their claim excepted from discharge (or reaffirmed), even though the merits of the case are weak. Statistics from a recent year, for example, show that approximately 8,000 cases were filed under this exception to discharge. Of those, over 5,000 were settled without trial. Of the remaining 3,000 creditors won just half. If those 3,000 are representative, then it is likely that in 2,500 cases, debtors settled by agreeing to repay part of the debt, even though they would have won the case had it gone to trial.

House Rep. No. 95–595 (Sept. 8, 1977), 95th Cong., 2d Sess., at 130–31, reprinted in 1978 U.S.Code Cong. & Admin.News, at 6091–92 (footnotes omitted).

In view of the legislative concern with both debtor and creditor abuses, the appropriate test is to look at all circumstances of the case, including allegations of creditor conduct. *In re Whiting*, 10 B.R. 687, 691 (Bankr.E.D.Pa.1981) (attorney's fees awarded when under all circumstances of the case, reasonable reliance on the financial statement not shown). It is insuffi-

cient to couch a "clearly inequitable" finding only in terms of creditor good faith. Congress rejected this standard in its 1978 compromise of § 523(d).[2]

Thus fees are to be awarded even if the creditor's unsuccessful lawsuit was neither frivolous nor filed in bad faith. *In re Carmen*, 723 F.2d, at 18; *Matter of Majewski*, 7 B.R., at 905.

As the *Schlickmann* Court stated:

I am mindful that in interpreting the statute as I have, honest creditors who might already be bearing the burden of a watered-down dividend on the debt owed to them will also be strapped with the expense of seeking to honestly and faithfully protect their rights. While in many cases I would be reluctant to saddle creditors with this additional cost, I feel my hands are tied. Section 523(d) does not provide for judicial discretion in this matter. It is a strong directive, with an exception in cases only of *clear inequity*. While the court could speculate as to cases which might fall within this exception, I don't feel this case is one in which Congress intended the exception to apply. My opinion and interpretation is buttressed by the Congressional Report on § 523(d).

Section 523(d) represents a compromise between the position taken in the House bill and the Senate amendment on the issue of attorney's fees in false financial statement complaints to determine dischargeability. The provision contained in the House bill permitting the court to award damages is eliminated. The court *must* grant the debtor judgment or a reasonable attorney's fee unless the granting of judgment would be clearly inequitable.

Thus, I feel that the court here must award the debtor costs and reasonable attorney's fees. While I find as fact that the plaintiff's complaint was neither frivolous nor filed in bad faith, those facts alone would not bring it within the exception of § 523(d). Congress seems to have clearly mandated that costs and attorney's fees shall be awarded in all but the rarest cases of clear inequity.

7 B.R., at 140–41 (footnote omitted, emphasis in original).

In dismissing plaintiff's complaint, I remarked that debtor's conduct in failing to list important debts was neither blameless nor excusable. Memorandum of Decision, at 11. Prior to trial, I ruled the omissions constituted a materially false written statement. § 523(a)(2)(B)(i) and (ii); Docket No. 15.

Regardless, I did not find, because I do not believe, Ms. Furimsky's failure to list debts indicated an intent to deceive plaintiff for $1,160 in cash. 11 U.S.C. § 523(a)(2)(B)(iv). She belonged to the plaintiff credit union since 1975 or 1976 and previously had submitted approximately ten loan applications. These prior dealings, and plaintiff's willingness to arrange a loan on one day's notice,[3] help explain why an unsophisticated applicant would negligently complete the loan application in 10–15 minutes "off the top of her head," without reading it carefully. Indeed, debtor produced a witness who testified the loan was approved on June 16—the day before the statement was filed.

■ Further, I found plaintiff failed to question debtor or otherwise verify an obvious discrepancy between the financial

---

**2.** In the Bankruptcy Amendments and Federal Judgeship Act of 1984, the Congress tilted toward a more creditor-oriented version of § 523(d). The section was amended to award attorney fees to a successful debtor "if the Court finds that the position of the creditor was not substantially justified, except that the Court shall not award such costs and fees if special circumstances would make the award unjust." § 307(b), Subtitle A, Title III, H.R. 5174, reprinted in 130 Cong.Rec. H. 7477 (daily ed. June 29, 1984). Title III amendments apply to cases

filed 90 days after July 10, 1984. § 533(a), Subtitle K, Title III, H.R. 5174. It is clear the version of § 523(d) I must apply here is more severe toward unsuccessful creditors.

**3.** She first approached the institution for the instant loan on June 16, 1981 and was given her check on the morning of June 17, after a brief conversation with Loan Officer Smith, with whom she had prior loans.

statement and a current credit report obtained by the loan officer that morning. This fails to constitute "reasonable reliance" for purposes of the statute. § 523(a)(2)(B)(iii). Memorandum of Decision, at 10–12.

 The question for decision is then whether it is "clearly inequitable" to award counsel fees when plaintiff failed to prove two of the mandatory four elements of § 523(a)(2)(B). Plaintiff's own regulations required verification of an applicant's credit history by *inter alia*, a credit report. Defendant's Exhibit 11, at ¶¶ I–D and I–F. A credit report, which undercuts plaintiff's reasonable reliance on the credit application, was in its files since June 17, 1981 but was not addressed until the day of trial, February 7, 1984. Court's Exhibit 1. Essentially, the purpose of § 523(d) is to encourage a creditor to carefully consider institution of § 523(a)(2) litigation. *In re Sidore*, 41 B.R. 206 at 210, Bankr. L. Rep. ¶ 69,904, at 85,273 (Bankr.W.D.N.Y.1984). By its own admission, plaintiff was unaware of the credit report's existence in its own files until trial. It does not appear that institution of this litigation was carefully considered.

Because I found no intent to deceive here, cases denying counsel fees on that basis are not controlling. *Granovetter*, 29 B.R., at 642; *Archangeli*, 6 B.R., at 53. Counsel fees have been awarded where, as here, the creditor has failed to show both an intent to deceive and reasonable reliance. *In re Folster*, 17 B.R., at 172; *Household Finance Corp. v. McClane*, 8 B.R. 666, 667 (Bankr.S.D.Ohio 1981); *Matter of Majewski*, 7 B.R., at 905 (omission not material and no intent to deceive). A fee award has been made even if reasonable reliance is the only element not established. *In re Lane*, 12 B.R. 455, 456 (Bankr.N.D.Ohio 1981); *In re Whiting*, 10 B.R., at 689–91.

 The plaintiff in this action has failed to carry its burden of proof that imposition of attorney's fees would be clearly inequitable. *In re Carmen*, 723 F.2d, at 18; *In re Lane*, 12 B.R., at 457 and n.5. Accord-

ingly, an award for a reasonable amount will be made. Plaintiff has requested an evidentiary hearing and discovery concerning reasonableness of the requested fee. That request is granted. Following formal or informal discovery, I will schedule an evidentiary hearing if the parties are unable to agree on a reasonable amount. It is unlikely I will award counsel fees of $23,010.00 for defending discharge of a $4,206.82 claim. *See, In re Schlickmann*, 7 B.R., at 141; *In re Sidore, supra*, at 210, Bankr.L.Rep. ¶ 69,904, at 85,274.

ORDERED ACCORDINGLY.