In re Rod Lane WILLIAMSON, Debtor.

**MERCANTILE BANK OF ILLINOIS, Plaintiff,**

v.

**Rod Lane WILLIAMSON, Defendant.**

**Bankruptcy No. 94–42411–ABF.
Adv. No. 95–4023–ABF.**

United States Bankruptcy Court,
W.D. Missouri.

April 7, 1995.

Ruth Unzicker, David Wylie, Neighbors & Frackowick, Overland Park, KS, for plaintiff.

Les D. Wight, Independence, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff Mercantile Bank of Illinois ("plaintiff") objected to the dischargeability of defendant/debtor's ("debtor") credit card debt in the amount of $3,180.89 pursuant to 11 U.S.C. § 523(a)(2)(A). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that debtor's obligation to plaintiff is dischargeable, and that the debtor is entitled to costs in the amount of $200.00 pursuant to 11 U.S.C. § 523(d).

## FACTUAL BACKGROUND

From 1986 to 1992 debtor was employed as a garage-door installer, earning between $15,000 and $22,000 a year. He obtained a credit card from plaintiff at some point during that period of time. Periodically, plaintiff automatically raised the credit limit, so that by 1992 debtor's credit limit was $8,500.00. Debtor purchased a residence in 1987. He testified said residence had a fair market value of $37,000.00 and, immediately prior to his bankruptcy, was encumbered by a mortgage debt of approximately $21,000.00.

Debtor testified he obtained the credit card in order to establish a good credit record. Therefore, he routinely used his credit card for the purchase of gasoline and other household items.

In January, 1992, debtor was offered a maintenance job by a friend in the Tampa, Florida area. Debtor intended to sell his home, quit his job, and relocate in Florida. Prior to the anticipated move, however, he became entangled in a boundary dispute involving his residence. Certain neighbors claimed an interest in debtor's property and he filed suit against them to resolve the dispute. One of the defendants in the suit filed a counterclaim against debtor. Debtor was unable to sell the home while the litigation was pending, so debtor rented the house to his brother.

In mid–1993 debtor stated he finally moved to Florida and took the maintenance job. The job lasted for only a short time, however, because debtor said his friend had found someone else to do the work, and because the cost of living in the Tampa area was prohibitive. In addition, debtor was unable to make the mortgage payments on his home in Kansas City because debtor's brother was not making his rental payments on a regular basis. In March of 1994 debtor left his job in Florida, and returned to Kansas City. Debtor stated he was out of work until sometime in May of 1994 when he found a job paying $7.00 an hour. Debtor is still employed at such position.

Between November 19, 1993, and September 7, 1994, debtor made thirty-seven purchases and took four cash advances on his account with plaintiff for a total obligation of $3,180.89. He filed a Chapter 7 bankruptcy petition on September 7, 1994.

## DISCUSSION

Section 523(a)(2) provides in part that a bankruptcy discharge does not affect any debt "for money, property, services, or any extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation or actual fraud." 11 U.S.C. § 523(a)(2)(A). Plaintiff contends that debtor intentionally and fraudulently misrepresented his ability to repay his obligation to plaintiff by continuing to use his credit card during the periods of time that his expenses exceeded his income. Therefore, plaintiff claims such misrepresentation excepts said obligation from discharge.

In determining whether a particular debt falls within one of the dischargeability exceptions in section 523(a)(2), the statute should be construed strictly against the objecting creditor and liberally in favor of the debtor. 3 Lawrence P. King et al., *Collier on Bankruptcy*, ¶ 523.05A, at 523–19 (15th ed. 1994) (citations omitted); *See also Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987) (holding that "any evidence presented must be viewed consistent with the congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code"). A creditor must prove the nondischargeability of a debt under section 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289–90, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

To establish fraud under section 523(a)(2)(A), the following five elements must be proved:

(1) debtor made representations;

(2) at the time the representations were made the debtor knew them to be false;

(3) debtor made the representations with the intention and purpose of deceiving the creditor;

(4) the creditor relied on the representations; and

(5) the creditor sustained the alleged injury as a proximate result of the representations.

*Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n. 1 (8th Cir.1987); *Beneficial of Missouri, Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922, 925 (Bankr.W.D.Mo.1991); *FCC Nat'l Bank v. Bartlett (In re Bartlett)*, 128 B.R. 775, 779 (Bankr.W.D.Mo.1991); *Citicorp Credit Serv. v. Hinman (In re Hinman)*, 120 B.R. 1018, 1021 (Bankr.D.N.D. 1990); *Citibank South Dakota N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (9th Cir. BAP 1988) *on remand*, 89 B.R. 840 (Bankr.E.D.Cal.1988).

Courts have found that credit card use satisfies the first element because it carries the representation that the buyer has the intention of repaying the charge. *Bartlett*, 128 B.R. at 779; *Hinman*, 120 B.R. at 1021; *see also Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 727 (Bankr.N.D.Ga.1985) (noting that this is the majority view). Therefore, that element is met. Plaintiff, however, must also prove that debtor knew at the time he used the credit card that he would be unable to repay the obligation incurred, and that he incurred the obligation with the intention and purpose of deceiving plaintiff. *Ophaug* at 342 n. 1.

In order to determine if a debtor has the requisite intent to deceive a creditor, courts consider one or more of the following factors:

(1) the length of time between the charges made and the filing of the bankruptcy;

(2) whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

(3) the number of charges made;

(4) the amount of the charges;

(5) the financial condition of the debtor at the time the charges were made;

(6) whether the charges were above the credit limit of the account;

(7) whether debtor made multiple charges on the same day;

(8) whether debtor was employed;

(9) debtor's prospects for employment;

(10) the financial sophistication of debtor;

(11) whether there was a sudden change in the debtor's buying habits; and

(12) whether the purchases were made for luxuries or necessities; *FCC National Bank/First Card v. Friend (In re Friend),* 156 B.R. 257, 261 (Bankr. W.D.Mo.1993); *Chase Manhattan Bank v. Carpenter (In re Carpenter),* 53 B.R. 724, 730 (Bankr.N.D.Ga.1985).

■ Applying these factors in this case demonstrates rather compellingly that this debt is dischargeable. The bankruptcy case was filed on September 7, 1994. In the four months prior to filing, debtor incurred four charges, for a total of $106.17. On May 3, 1994, debtor made a payment of $250.00 on this account, and on July 7, 1994, he made a payment of $500.00. This is not a debtor who ran up unpaid charges immediately prior to the filing of his bankruptcy petition.

The uncontradicted evidence is that debtor consulted an attorney regarding his financial condition on August 1, 1994, and the last charge was incurred on July 12, 1994. On August 1, 1994, debtor was advised by the attorney representing him in the boundary dispute with his neighbors that the litigation would in all probability not succeed. Until that time, Mr. Williamson stated he intended to sell the residence in which he believed he had substantial equity, and use that equity to pay down his outstanding credit card debt. When he realized he would be unable to recover the equity in his home, his discussion with his attorney then turned to the subject of his debts. His attorney advised him to consider filing a Chapter 7 petition, which he did the following month. Debtor's uncontradicted testimony is that he fully intended to pay all his obligations from the sale of his residence, that he had not been advised to file bankruptcy prior to August 1, 1994, and that he did not consult an attorney solely to discuss filing bankruptcy.

The evidence also shows that debtor made forty-one charges over a period of approximately ten months. With the exception of four cash advances, all the charges were typical of his credit card use in years past.

He used the credit card to purchase gasoline and household goods. The four cash advances were as follows: (1) on February 22, 1994, debtor obtained $500.00; (2) on April 6, 1994, debtor obtained $500.00; (3) on April 26, 1994, debtor obtained $500.00; and (4) on May 11, 1994, debtor obtained $145.07. Debtor stated that he used the cash advances to make payments on existing debt until such time as the litigation could be resolved and he could realize the equity in his home. Plaintiff did not contradict this testimony. Neither the number of charges made nor the amount of such charges indicates debtor intended to deceive or defraud plaintiff.

Debtor was unemployed for approximately six weeks in March, April, and May of 1994, when some of these charges were incurred. Debtor moved from Florida to Kansas City during that six week period of time and spent the remainder of the time looking for employment. Debtor obtained gainful employment soon after he returned from Florida, and has been employed ever since. Even though debtor's expenses were in excess of his income during much of the time he was employed, as well as unemployed, he testified that he intended to pay or substantially reduce his debts from the proceeds of the sale of his house. Only when he realized he would be unable to sell his home for its fair market value did he turn to bankruptcy as an alternative.

There are an insignificant number of examples where debtor made multiple charges on the same day.[1] Further, he had used the credit card for several years primarily for gasoline purchases and household goods. With the exception of the four cash advances, he continued to use the credit card for routine purchases during the relevant period.

Debtor's testimony, and my observation of him, indicates he is not financially sophisticated, and that he did not intend to incur charges he would later be unable to pay.

The Court must finally consider whether the purchases were made for luxuries or

---

1. On four separate occasions debtor used the credit card more than once in a single day. On January 3, 1994, debtor made three purchases totalling $87.39. On February 9, 1994, debtor made two purchases totalling $55.95. On March 24, 1994, debtor made two purchases totalling $86.80 and withdrew $350.55 as a cash advance. Finally, on April 8, 1994, debtor made two purchases totalling 59.60.

necessities. The only item that might be termed a luxury is a round of golf on March 27, 1994, for which debtor incurred charges of $29.00. The remainder of the charges were incurred to purchase necessities of life, or cash advances used to make debt payments.

I find that *none* of the twelve factors discussed above indicates this debt should be excepted from discharge. I find debtor's explanation of his actions to be credible. I further find that the loss of debtor's residence, which was not foreseen by debtor, caused a substantial change in his financial situation, and that the charges at issue here were incurred before debtor realized he would not receive any equity from the sale of his home. I find that debtor did not know at the time the charges were incurred that he would not be able to pay them, and that he did not incur such charges with the intention and purpose of deceiving the plaintiff. Plaintiff has, therefore, failed to prove this necessary element of fraud, and for that reason, the obligation to plaintiff is dischargeable.

▉▉ The next issue concerns whether the debtor is entitled to reimbursement of costs. The "American Rule" generally provides that the prevailing party is not entitled to attorney's fees and/or costs absent a statute providing for such an award. *Gibbs v. Randolph (In re Randolph)*, 28 B.R. 811, 814 (Bankr.E.D.Va.1983). However, section 523(d) of the Bankruptcy Code (the "Code") provides as follows:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523. "Substantially justified" has been interpreted to mean that the plaintiff has a reasonable basis in both law and fact to ask for a determination of dischargeability. *Beneficial of Missouri, Inc. v. Shur-*

*bier (In re Shurbier)*, 134 B.R. 922, 927 (Bankr.W.D.Mo.1991). That basis becomes unreasonable if a plaintiff continues to pursue a proceeding after it knew or should have known that it could not prevail. *Shurbier*, at 928.

▉▉ The language of section 523(d) is mandatory. *See Shurbier*, at 928; *Randolph*, 28 B.R. at 813. *Commercial Union Insurance Co. v. Sidore (In re Sidore)*, 41 B.R. 206, 208 (Bankr.W.D.N.Y.1984). Therefore, a creditor which brings a cause of action under section 523(a)(2) is on statutory notice that the court shall award costs and reasonable attorney's fees if the court finds that the position of the creditor was not substantially justified, unless the court finds that special circumstances would make the award unjust. 11 U.S.C. § 523(d). I find that initiating this cause of action was not substantially justified for the following reasons. Debtor's credit limit was automatically increased to $8,500.00. The bank extended credit in this amount to a maintenance man who had never earned in excess of $22,000.00 per year. When debtor filed bankruptcy, plaintiff did not appear at the section 341 Meeting of Creditors to inquire as to the reason for such bankruptcy, and to determine, prior to filing suit, whether there was any basis for such suit. According to plaintiff's counsel, his firm was not retained in time to appear at the section 341 meeting. Shortly before the end of the sixty-day period for filing objections to dischargeability, counsel entered an appearance and asked for a sixty-day extension of time in which to determine whether to ask for a determination of dischargeability. Such extension was granted by this Court. Yet, even with an extended period, the bank did not examine the debtor, and did not seek a court order requiring the debtor to submit to an examination. *See* Fed.R.Bankr.P. 2004. Only after the adversary proceeding was filed, did plaintiff submit interrogatories to debtor to ascertain the defenses he might have to a dischargeability complaint. That, however, is too late. The Code requires a creditor to take steps, prior to filing suit, to ascertain that the filing of such adversary action is "substantially justified." *See* S.Rep. No. 65, 98th Cong., 1st Sess. 58, 59 (1983).

■ Section 523(d) was enacted to discourage frivolous objections to discharge of consumer debts, especially debts incurred for expenses reasonably necessary to debtor's support.[2] *Id.* Congress was justifiably concerned that creditors would be able to use the threat of a section 523 nondischargeability proceeding to extract settlements from debtors whose debts would be dischargeable if litigated. *Shurbier,* 134 B.R. at 927; *Randolph,* 28 B.R. at 814; H.Rep. No. 595, 95 Cong., 1st Sess., 131 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787. The only way to prevent creditors from obtaining leverage over debtors by first filing a suit, and considering its merits later, is to require the creditor to pay the costs, including reasonable attorney's fees, incurred by a debtor who must defend against a frivolous suit.

■ Plaintiff contends that since debtor, who appeared *pro se,* did not file a counterclaim seeking an award under section 523(d), such an award cannot be made. Two older cases indicate that a debtor who does not specifically request an assessment of costs and/or attorney's fees might waive the right thereto. *See West Springfield M.E. Credit Union v. Finnie (In re Finnie),* 21 B.R. 368, 370 (Bankr.D.Mass.1982); *Georgia Bank and Trust Co. v. McKinney (In re McKinney),* 18 B.R. 607, 612 (Bankr.M.D.Ga.1982). But the more recent cases recognize that the language of section 523(d) is mandatory. *See Shurbier,* 134 B.R. at 928; *Randolph,* 28 B.R. at 813. *Commercial Union Insurance Co. v. Sidore (In re Sidore),* 41 B.R. 206, 208 (Bankr.W.D.N.Y.1984). *See also, First Nat'l Bank of Lincolnshire v. Bernhardy,* 103 B.R. 198, 200 (Bankr.N.D.Ill.1989) (holding that a request for attorney's fees could be submitted for the first time after the appellate court had affirmed the dischargeability of the debt). Plaintiffs, thus, are on notice that if they challenge the dischargeability of consumer debts they expose themselves to an award of fees and costs. Here, there is no question that the charges involved were consumer debts. Indeed, plaintiff points up in its Memorandum of Law that "all 35 of the purchases were for less than $100 and appear to be for routine items, especially gasoline." Doc. # 14 at p. 9. Plaintiff, therefore, knew that at least some of the charges were made for consumer debts and, by the terms of section 523(d), was on notice that it might be assessed costs and attorney's fees.

■ Section 523(d) was enacted to protect debtors from creditors who extract settlements because they are better able to pay counsel and threaten litigation. The language is mandatory, so creditors are on notice of its potential applicability. There is no basis for departing from the plain language of the statute by requiring that the debtor pray for such relief prior to trial.

■ The only remaining issue is whether a *pro se* debtor is entitled to be reimbursed for his costs. Because debtor was not represented by an attorney, no attorney's fees were incurred. However, debtor testified that he spent approximately thirty hours in preparation for the trial, that he is compensated in his regular employment at the rate of $7.00 per hour, and that he also incurred expenses for approximately seventy photocopies. Other courts hold that even if litigants are under no obligation to pay their attorneys for representation, they are entitled to recover attorney's fees when an allowance is proper. *Gibbs v. Randolph (In re Randolph),* 28 B.R. 811, 813 (Bankr.E.D.Va. 1983) (citing *Bills v. Hodges,* 628 F.2d 844, 847 (4th Cir.1980)). Where, as here, the debtor is not represented, he is similarly entitled to recover the costs incurred in preparing his own defense. Otherwise, creditors would bear no risk in bringing unjustified suits against the most vulnerable debtors, those without counsel.

■ For all of the above reasons, I find that this was an action in which plaintiff requested dischargeability of a consumer debt, that debtor incurred certain costs in defending himself in this litigation, that plaintiff was not substantially justified in requesting this dischargeability determination, and that no special circumstances exist mak-

---

**2.** I note that debtor also obtained a second credit card from First Card. He incurred credit card debt from First Card in the amount of $8,254.85 which was discharged in the bankruptcy case without incident.

ing an award of costs unjust. Therefore, plaintiff is required to reimburse debtor for his costs in the amount of $200.00.

An Order consistent with this Memorandum Opinion will be entered this date.